# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

In re CCA Recordings 2255 Litigation,

     Petitioners,

Case No. 19-cv-2491
(This Document Relates to Case Nos.
15-cr-20043-JAR-2, United States v.
Aguilera, 20-cv-02027-JAR, Aguilera v.
United States; 14-cr-20096-JAR-5,
United States v. Alvarez, 19-cv-2227-
JAR, Alvarez v. United States; 15-cr-
20045-JAR-1, United States v.
Birdsong, 19-cv-02406-JAR, Birdsong v.
United States; 15-cr-20086-DDC-1,
United States v. Blakney, 18-cv-02454-
JAR, Blakney v. United States; 14-cr-
20096-JAR-3, United States v.
Chinchilla, 19-cv-02392-JAR,
Chinchilla v. United States; 14-cr-
20130-JAR-2, United States v. Clark,
19-cv-20410-JAR, Clark v. United
States; 14-cr-20096-JAR-6, United
States v. Faulkner, 18-cv-02452-JAR,
Faulkner v. United States; 15-cr-20042-
JAR-2, United States v. Felix-Gamez,
18-cv-02487-JAR, Felix-Gamez v.
United States; 14-cr-20068-DDC-2,
United States v. Galvan-Campos, 19-cv-
02055-JAR, Galvan-Campos v. United
States; 14-cr-20134-JAR-1, United
States v. Harssfell, 19-cv-02722-JAR,
Harssfell v. United States; 15-cr-20019-
JAR-1, United States v. Haupt, 18-cv-
02423-JAR, Haupt v. United States; 15-
cr-20100-JAR-1, United States v.
Hollins, 18-cv-02465-JAR, Hollins v.
United States; 15-cr-20032-DDC-2,
United States v. Hurtado; 18-cv-2463-
JAR-JPO, Hurtado v. United States;
15-cr-40064-DDC-1, United States v.
Johnson, 18-cv-04099-JAR, Johnson v.
United States; 14-cr-20138-DDC-1,
United States v. Jones; 18-cv-2554-JAR-
JPO, Jones v. United States; 16-cr-

20022-JAR-2, United States v. Gary Jordan, 19-cv-2015-JAR-JPO, Gary Jordan v. United States; 15-cr-40078-DDC-1, United States v. Krites, 18-cv-04096-JAR, Krites v. United States; 14-cr-20068-DDC-5, United States v. Lougee, 19-cv-02226-JAR, Lougee v. United States; 15-cr-20098-JAR-1, United States v. Love; 19-cv-2732-JAR-JPO, Love v. United States; 16-20003-DDC-1, United States v. McCambry; 19-2394-JAR-JPO, McCambry v. United States; 15-cr-20050-JAR-1, United States v. McDaniel, 19-cv-02145-JAR, McDaniel v. United States; 14-cr-20035-JAR-1, United States v. Meinert, 18-cv-02455-JAR, Meinert v. United States; 14-cr-20068-JAR-9, United States v. Murphy, 19-cv-02365-JAR, Murphy v. United States; 14-cr-20096-JAR-1, United States v. Olea-Monarez; 20-cv-2051-JAR-JPO, Olea-Monarez v. United States; 14-cr-20096-JAR-7, United States v. Orduno-Ramirez, 19-cv-02166-JAR, Orduno-Ramirez v. United States; 15-cr-20019-JAR-2, United States v. Pavone; 20-cv-02400-JAR, Pavone v. United States; 14-cr-20014-JWL-13, 15-cr-20006-JAR-1, 15-cr-20020-JAR-5, United States v. Phommaseng, 18-cv-02477-JAR, 18-cv-02478-JAR, 18-cv-02479, Phommaseng v. United States; 15-cr-40059-DDC-2, United States v. Ramirez, 19-cv-04059-JAR, Ramirez v. United States; 14-cr-20067-JAR-1, United States v. Rapp, 18-cv-02117-JAR, Rapp v. United States; 12-cr-20003-JAR-10, United States v. Redifer, 19-cv-02594-JAR, Redifer v. United States; 15-cr-20042-JAR-1, United States v. Roark, 19-cv-02405-JAR, Roark v. United States; 15-cr-20099-DDC-1, United States v. Shevlin; 18-cv-2501-JAR-JPO, Shevlin v. United States; 13-cr-40123-JAR-1, United States v. Sneed, 19-cv-04008-

JAR, Sneed v. United States; 13-cr-20070-JAR-4, United States v. Tillman, 19-cv-02083-JAR, Tillman v. United States; 14-cr-20096-JAR-8, United States v. Valdez, 19-cv-02254-JAR, Valdez v. United States; 13-cr-20081-JAR-1, United States v. Warren, 19-cv-02220-JAR-1, Warren v. United States; 15-cr-20081-DDC-2, United States v. Wilson, 18-cv-02499-JAR, Wilson v. United States)

v.

United States of America,

　　　Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on the above-captioned consolidated petitioners' Motions to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255. These petitioners allege that the government violated the Sixth Amendment by intentionally and unjustifiably intruding into their attorney-client relationships by becoming privy to their attorney-client communications after their guilty pleas or convictions, but before they were sentenced. Petitioners ask the Court to reject the government's request to dismiss their motions on procedural grounds and find that they have made a sufficient showing to warrant an evidentiary hearing. As a remedy, petitioners ask the Court to vacate their judgments with prejudice to refiling or alternatively, to reduce their custodial sentence by 50% and vacate any term of supervised release.

Most of these petitioners recently requested the Court to set a status conference to determine whether and when their respective habeas motions should be set for evidentiary

hearing.[1]  This Court declined to set the matter for a status conference, explaining that it intended to issue orders on the majority of these pending motions after review of and in conjunction with the post-evidentiary briefing in *Hohn v. United States*, No. 19-2082, where the petitioner alleged a pretrial Sixth Amendment violation.[2]  The Court has now ruled in *Hohn*, clarifying that a pretrial violation alleged under the Tenth Circuit's decision in *Shillinger v. Haworth* is a per se Sixth Amendment violation that is not subject to harmless-error analysis.[3]  In this Order, the Court addresses whether the *Shillinger* per se rule *categorically* applies when the alleged Sixth Amendment violation occurs post-plea or conviction but prior to sentencing.

## I.    Background

The Court assumes the reader is familiar with its January 18, 2021 Order in the consolidated master case that frames the issue now before the Court ("January 18 Order").[4]  That Order addressed the governing standard for Sixth Amendment intentional-intrusion claims under *Shillinger*, which held that a per se violation occurs when the government becomes privy to protected attorney-client communications because of its purposeful, unjustified intrusion into the attorney-client relationship.[5]

The January 18 Order generally divides over 100 consolidated petitioners' alleged intentional-intrusion Sixth Amendment claims into three temporal categories: (1) violations that occurred before the plea or conviction; (2) violations that occurred after the plea or conviction

---

[1] Doc. 1023.  Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in this consolidated case, *In re CCA Rec. 2255 Lit.*, Case No. 19-2491-JAR-JPO.  With the exception of *United States v. Carter*, Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order"), citations to filings in Case No. 16-20032-JAR are prefaced with "*Black*, Doc."

[2] Doc. 1026.

[3] Doc. 1033 (citing 70 F.3d 1132 (10th Cir. 1995)).

[4] Doc. 730.

[5] 70 F.3d at 1142.

but before sentencing; and (3) violations that occurred after sentencing.[6]  This temporal categorization was driven in part by the parties' divergent approaches to applying Tenth Circuit precedent in *Shillinger*.  Petitioners seek to apply *Shillinger*'s per se rule to all alleged violations, regardless of timing and circumstance; the government effectively ignores the per se rule or attempts to discount that extant decision as simply bad law.

Given the number of cases affected, the Court endeavored to establish legal standards common to these categories of petitioners, with individualized application to follow for each petitioner.  The Court determined that the rule in *Tollett v. Henderson*[7] procedurally barred petitioners who alleged pre-plea Sixth Amendment violations from advancing those claims.[8] The Court dismissed one petitioner's § 2255 motion on these grounds and certified the issue for appeal; thirty-nine petitioners have successfully moved the Court to stay dismissal of their claims pending the appeal of that case.[9]  The Court also determined that approximately twenty petitioners lacked standing to advance their Sixth Amendment claims for various reasons, including: claims that alleged post-sentencing violations; claims where petitioners who had been deported challenged only their sentence; claims where petitioners challenging their sentence had been sentenced to the mandatory-minimum sentence; and claims involving binding pleas that were accepted by the court at the change-of-plea hearing.[10]

The Court contemporaneously ruled that three petitioners who proceeded to trial in their underlying criminal proceedings are entitled to evidentiary hearings on their Sixth Amendment

---

[6] *See* Docs. 730, 784.

[7] 411 U.S. 258 (1973).

[8] Doc. 730 at 29–41.

[9] Docs. 874, 922.

[10] Docs. 730, 784.

claims involving audio recordings.[11]  These petitioners, including Hohn, are in the first temporal category of claims asserting pretrial Sixth Amendment violations.  Two of those petitioners' motions were resolved by the parties; Hohn's evidentiary hearing was held August 9 and 10, 2021.[12]  The Court ultimately denied Hohn's § 2255 motion on the merits after determining that he did not satisfy the protected-communication element under *Shillinger*.[13]

From the outset, the government has argued that each and every petitioner's Sixth Amendment claim in these consolidated proceedings is subject to harmless-error review, under which constitutional error may be disregarded on habeas review unless found to have had "substantial and injurious effect or influence" on the outcome of the underlying proceeding.[14] The Court addressed the government's harmless-error argument prior to the evidentiary hearing in *Hohn*.[15]  The Court rejected the government's claim that it needed to review the protected attorney-client communications prior to the evidentiary hearings in order to determine whether any alleged Sixth Amendment violation amounts to harmless error.

The above-captioned petitioners assert or have moved for leave to amend to assert claims in the second temporal category of motions alleging post-plea or conviction, pre-sentencing Sixth Amendment violations.  As in *Hohn*, the government argues that these petitioners' claims are subject to harmless-error analysis.

---

[11] Docs. 731 (Vernon Brown); 732 (William Mitchell); 758 (Steven Hohn).

[12] The Court is still reviewing one remaining § 2255 motion for a petitioner who proceeded to trial and who alleges a video recording claim.  *See United States v. Cortez-Gomez*, No. 16-40091-01-DDC.

[13] Doc. 1033.

[14] *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

[15] Doc. 940.  The Court's order also applied to consolidated petitioner William Mitchell; the parties subsequently resolved his § 2255 motion by agreement.

II.     **Sixth Amendment Standard**

The January 18 Order sought to reaffirm the Court's analysis and legal determinations

regarding what is required in the Tenth Circuit to establish a violation of the Sixth Amendment

based on the government's alleged intentional intrusion into petitioners' protected attorney-client

communications and is incorporated by reference herein.[16]  The Court will provide excerpts from

the January 18 Order as needed to frame and inform its discussion of the issues presently before

it.

A.     **Overview**

The Sixth Amendment provides that a criminal defendant shall have the right to "the

Assistance of Counsel for his defence."[17]  Claims of government intrusion into the attorney-

client relationship like those at issue here are included in the category of cases to be considered

when deciding if a defendant has been denied the right to effective assistance of counsel.  The

Supreme Court has explained that this right has been accorded "not for its own sake, but because

of the effect it has on the ability of the accused to receive a fair trial."[18]

In general, to prevail on an ineffective assistance of counsel claim under the Sixth

Amendment, a petitioner has the burden of showing a reasonable probability of prejudice.[19]  In

*Strickland v. Washington*, the Supreme Court set forth the familiar two-prong standard for

evaluating ineffective assistance of counsel: that counsel's performance was deficient and that

deficiency prejudiced the defense.[20]  The prejudice requirement, which is at issue in this case,

---

[16] Doc. 730 at 5–20.

[17] U.S. Const. amend. 6.

[18] *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)).

[19] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[20] *Id.*

"arises from the very nature of the right to effective representation."[21]  In other words, "a violation of the Sixth Amendment right to *effective* representation is not 'complete' until the defendant is prejudiced."[22]

Relevant here, the Sixth Amendment right to effective assistance of counsel includes the ability to speak candidly and confidentially with counsel free from unreasonable government interference.[23]  The Supreme Court has held that the government violates the Sixth Amendment when it intentionally interferes with the confidential relationship between defendant and defense counsel and that interference prejudices the defendant.[24]  The Court did not, and still has not, resolved "the issue of who bears the burden of persuasion for establishing prejudice or lack thereof when the Sixth Amendment violation involves the transmission of confidential defense strategy information."[25]  As discussed in detail in the January 18 Order, federal appellate courts are divided on the issue in cases where the prosecution intentionally obtained, without any legitimate justification, confidential attorney-client information.[26]  As discussed below, the Tenth Circuit has found a per se violation of the Sixth Amendment once the defendant demonstrates that the prosecution improperly intruded into the attorney-client relationship.[27]

---

[21] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006).

[22] *Id.* (citing *Strickland*, 466 U.S. at 685).

[23] *See Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1979) ("One threat to the effective assistance of counsel posed by government interception of attorney-client communications lies in the inhibition of free exchanges between defendant and counsel because of the fear of being overheard.").

[24] *See United States v. Morrison*, 449 U.S. 361, 365 (1981); *Weatherford*, 429 U.S. at 554 n.4.

[25] *Cutillo v. Cinelli*, 485 U.S. 1037 (1988) (White, J., dissenting from denial of certiorari); *see Kaur v. Maryland*, 141 S. Ct. 5 (2020) (Sotomayor, J., statement respecting denial of certiorari).

[26] *See Cutillo*, 485 U.S. at 1037–38 (White, J., dissenting) (noting conflicting approaches between the Circuits in cases where the Sixth Amendment violation involves the transmission of confidential defense strategy information); Doc. 730 at 9–10 (discussing split among the circuit courts of appeal and collecting cases).

[27] *Shillinger v. Haworth*, 70 F.3d 1132, 1141–42 (10th Cir. 1995).

B.      *Shillinger v. Haworth*

In *Shillinger*, the prosecutor solicited information about the defendant's pre-trial preparation sessions from a sheriff's deputy who was present in the courtroom and used that information at trial to impeach the defendant and again in closing argument.[28]  The Tenth Circuit held that the prosecutor's intentional intrusion into the attorney-client relationship constitutes a direct interference with the Sixth Amendment rights of a defendant; absent a countervailing state interest, such an intrusion constitutes a per se violation of the Sixth Amendment.[29]  In other words, when the government becomes privy to confidential communications because of its unjustified, purposeful intrusion into the attorney-client relationship, "a prejudicial effect on the reliability of the trial process must be presumed."[30]  The Tenth Circuit clarified, however, that this per se rule "in no way affects the analysis to be undertaken in cases in which the state has a legitimate law enforcement purpose for its intrusion."[31]  Such cases would require proof of prejudice, or "'a realistic possibility of injury to [the defendant] or benefit to the [government]' in order to constitute a violation of a defendant's Sixth Amendment rights."[32]

The court further recognized that even where there has been an unjustified intrusion resulting in a per se Sixth Amendment violation, the court must fashion a remedy "tailored to the injury suffered."[33]  After affirming the lower court's grant of habeas relief, the *Shillinger* court remanded for an evidentiary hearing to determine if the remedy imposed—a new trial—was tailored to cure the taint of the intentional-intrusion violation or whether the government's

---

[28] *Id.* at 1134–36.

[29] *Id.* at 1142.

[30] *Id.*

[31] *Id.* (citing *Weatherford v. Bursey*, 429 U.S. 545, 557 (1977)).

[32] *Id.* (alteration in original) (quoting *Weatherford*, 429 U.S. at 558).

[33] *Id.* (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)).

conduct justified a different remedy, such as recusal of the original prosecution team or even dismissal of the indictment.[34]

In the January 18 Order, this Court rejected the government's broad arguments that the consolidated petitioners are not entitled to rely upon *Shillinger*'s per se rule for several reasons. First, the Court found that the ruling was not dicta.  Because the *Shillinger* court expressly concluded that this per se rule provides "the relevant standard" for assessing intentional-intrusion claims, it is binding Tenth Circuit precedent.[35]

Second, the Court rejected the government's argument that under the Supreme Court's decision in *United States v. Gonzalez-Lopez*,[36] petitioners must nonetheless establish actual prejudice to succeed on their Sixth Amendment claims.[37]  Because the *Shillinger* court expressly acknowledged both *Strickland*'s general rule and its direct state-interference exception, this Court explained that *Gonzalez-Lopez* does not alter that exception that a defendant need not always show prejudice to prove an ineffective-assistance Sixth Amendment claim.[38]  And because the Tenth Circuit reached the same conclusion in *Shillinger*, the decision is consistent with the Supreme Court's decision in *Gonzalez-Lopez*.[39]

Third, the Court addressed the government's position questioning whether *Shillinger* is good law in light of the Supreme Court's view in *Weatherford v. Bursey* and *United States v. Morrison* that at least "a realistic possibility" of prejudice must be demonstrated to substantiate a Sixth Amendment violation of the kind alleged here, and a presumption falls short of this

---

[34] *Id.* at 1142–43.

[35] Doc. 730 at 13 (quoting *Shillinger*, 70 F.3d at 1139).

[36] 548 U.S. 140 (2006).

[37] Doc. 730 at 13.

[38] *Id.* at 15–16.

[39] *Id.*

demonstration.[40]  This Court explained that the Tenth Circuit analyzed and distinguished *Weatherford*, noting that the Supreme Court "emphasized both the absence of purposefulness in the prosecutor's intrusion and the legitimate law enforcement interests at stake."[41]  The *Shillinger* court concluded that, unlike in *Weatherford*, "the intrusion here was not only intentional, but also lacked a legitimate law enforcement purpose."[42]  The court also explained that *Morrison* "left open the question of whether intentional and unjustified intrusions upon the attorney-client relationship may violate the Sixth Amendment even absent proof of prejudice."[43]  As previously discussed, *Morrison* never reached the prejudice question, "holding only that even if the defendant's Sixth Amendment rights were violated, dismissal of the indictment was an inappropriate remedy in that case."[44]  Under *Shillinger*, once petitioners demonstrate the prosecution team intentionally and unjustifiably became privy to their protected attorney-client communications, prejudice is presumed.[45]  In the Tenth Circuit, this presumption results in a per se Sixth Amendment violation.[46]

## III.   Discussion

### A.   Harmless-Error Analysis and *Shillinger*

This Court first had occasion to address the government's harmless-error argument prior to the evidentiary hearing in *Hohn*, where the government argued that it needed to review the call

---

[40] *Id.* at 16–17.

[41] *Shillinger v. Haworth*, 70 F.3d 1132, 1138–39 (10th Cir. 1995).

[42] *Id.* at 1139.

[43] *Id.* at 1140.

[44] *Id.*

[45] *See id.* at 1142; Doc. 730 at 10.

[46] *See Shillinger*, 70 F.3d at 1140, 1142 (distinguishing between the First Circuit's burden-shifting approach, which treats the presumption of prejudice as rebuttable, and the Third Circuit's per se rule, and ultimately adopting the latter approach (first citing *United States v. Mastroianni*, 749 F.2d 900, 907 (1st Cir. 1984); and then citing *United States v. Levy*, 577 F.2d 200, 210 (3d Cir. 1978))).

on which Hohn based his Sixth Amendment claim for evidence that might prove the alleged violation was harmless.  The Court agreed with Hohn that under *Shillinger*, intentional-intrusion violations are a type of structural error that are not subject to harmless-error analysis.[47]  The Court subsequently clarified this ruling in its post hearing Memorandum and Order in *Hohn*, which is incorporated by reference herein.[48]

As this Court explained, the Supreme Court has recognized that certain denials of the Sixth Amendment right to effective assistance of counsel "make the adversary process itself presumptively unreliable."[49]  These per se Sixth Amendment violations are not subject to harmless-error analysis—prejudice is presumed.[50]  The Supreme Court has relieved defendants of the obligation in *Strickland* to make an affirmative showing of prejudice, and presumed such effect in a very narrow set of cases, including: the actual or constructive denial of counsel at a critical stage of trial, state interference with counsel's assistance, or counsel that labors under actual conflicts of interest.[51]  In these cases, prejudice is presumed because the circumstances are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.[52]  These types of presumptively prejudicial Sixth Amendment violations are part of the so-called *Cronic*-error variety of Supreme Court jurisprudence.[53]  When this type of error

---

[47] Doc. 940 at 13–15.

[48] Doc. 1033 at 11–17.

[49] *Id.* at 14 (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984))

[50] *Id.*

[51] *Id.* (citing *Cronic*, 466 U.S. at 658–660); *Strickland v. Washington*, 466 U.S 668, 692 (1984).

[52] *Id.* (quoting *Cronic*, 466 U.S. at 658); *see Strickland*, 466 U.S. at 692; *Mickens v. Taylor*, 535 U.S. 162, 175 (2002).

[53] *Cronic*, 466 U.S. at 658.  To be clear, neither Hohn nor consolidated petitioners allege that they were actually or constructively denied the right to counsel at a critical stage of trial.  Instead, they allege state interference with counsel's assistance.

happens, the issue is not whether the error is harmless; instead, the court irrebutably presumes that it was prejudicial.[54]

This Court explained that the Tenth Circuit adopted this reasoning in *Shillinger* in holding that prejudice is presumed for the government's intentional and unjustified intrusion into the defendant's attorney-client relationship.[55]  In fashioning a rule that "best accounts for the competing interests at stake," the Tenth Circuit recognized and drew upon this category of cases where Sixth Amendment prejudice is presumed,[56] specifically cases where direct state interference with the right to effective counsel has been held to violate the defendant's Sixth Amendment right per se.[57]  The court cited the rationale behind the use of a per se rule in such cases: "[t]hese state-created procedures impair the accused's enjoyment of the Sixth Amendment guarantee by disabling his counsel from fully assisting and representing him."[58]  The quoted passage goes on to state, "[b]ecause these impediments constitute direct state interference with the exercise of a fundamental right, and because they are susceptible to easy correction by prophylactic rules, a categorical approach is appropriate."[59]  The court proceeded to hold that a prosecutor's intrusion into the attorney-client relationship likewise constitutes a "direct interference" with the fundamental Sixth Amendment rights of a defendant to a fair adversary

---

[54] *Id.* at 659 & n.25; *see also Bell v. Cone*, 535 U.S. 685, 695–96 (2002).

[55] Doc. 1033 at 14–16.

[56] *Shillinger v. Haworth*, 70 F.3d 1132, 1141 (10th Cir. 1995) (citing *Strickland*, 466 U.S. at 692; then citing *Perry v. Leeke*, 488 U.S. 272, 279–80 (1989); and then citing *Cronic*, 466 U.S. at 658 & n.24).

[57] *Id.* (first citing *Ferguson v. Georgia*, 365 U.S. 579 (1961) (prohibiting direct examination of the defendant by his counsel); then citing *Brooks v. Tennessee*, 406 U.S. 605 (1972) (requiring those defendants who choose to testify to do so before any other defense witnesses); then citing *Herring v. New York*, 422 U.S. 853 (1975) (refusing to allow defense counsel closing argument in a bench trial); and then citing *Geders v. United States*, 425 U.S. 80 (1976) (prohibiting any consultation between a defendant and his attorney during an overnight recess separating the direct-examination and the cross-examination of the defendant)).

[58] *Id.* (quoting *United States v. Decoster*, 624 F.2d 196, 201 (D.C. Cir. 1979)).

[59] *Id.* (quoting *Decoster*, 624 F.2d at 201).

proceeding.[60]  Absent a countervailing government interest, such an intentional intrusion constitutes a per se violation of the Sixth Amendment, where "a prejudicial effect on the reliability of the trial process must be presumed."[61]  In adopting this per se rule, the court stressed that "no other standard can adequately deter this sort of misconduct," and that "[p]rejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost."[62]

The Tenth Circuit further held that this per se rule subsumes the harmless-error analysis; it recognizes that such violations are never harmless "because they 'necessarily render a trial fundamentally unfair.'"[63]  Accordingly, *Shillinger* instructs that the circumstances of these intrusions categorically justify a presumption of prejudice that precludes application of the harmless-error standard and requires automatic relief.[64]  In other words, the Tenth Circuit has recognized that a *Shillinger* violation constitutes a narrow variety of presumptively prejudicial constitutional error identified by *Strickland* and its progeny.[65]

With this analytical framework in mind, the Court turns to the application of its harmless-error ruling to the remaining category of pending § 2255 cases where the alleged Sixth Amendment violation occurred after a guilty plea or conviction at trial but before sentencing.

---

[60] *Id.* at 1142.

[61] *Id.*

[62] *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)).

[63] *Id.* (quoting *Rose v. Clark*, 478 U.S. 570, 577 (1986)).

[64] *Id.*

[65] Doc. 1033 at 15–16.

### B.      Application to Remaining Temporal Category of Claims

The January 18 Order explained that the *Shillinger* per se rule was not necessarily limited to violations that occurred at trial.[66]  But relative to the category of claims at issue here, the Court found that when the alleged intrusion occurs after the petitioner entered a guilty plea or was convicted at trial, it eliminates the possibility that the intrusion could have tainted the petitioner's plea or conviction.[67]  Thus, absent the possibility of any related unfairness or injury at the conviction stage, petitioners whose claims fall under this category do not have standing to challenge their guilty plea or conviction under § 2255.[68]  The Court further found, however, that the government failed to establish any basis for finding that these petitioners lack standing to challenge their sentence, as it did not identify any reason that the Court could not grant relief, only that it should not.[69]  Notably, the government did not acknowledge or address the categorical presumptive prejudice that applies to a *Shillinger* per se violation in arguing certain petitioners lacked standing, focusing instead on the lack of prejudice in individual cases.[70]

Petitioners in this category acknowledge that they cannot demonstrate the possibility of prejudice on their Sixth Amendment claims, but instead allege presumptive prejudice under the rule in *Shillinger*.  Like Hohn, these petitioners argue that once they prove the elements under *Shillinger*, prejudice is presumed and granting their § 2255 motions should be automatic, requiring either dismissal of the case or a significant reduction of sentence and/or vacation of any term of supervised release.  The government responds that petitioners' wholesale reliance on

---

[66] Doc. 730 at 17–19 (explaining scope of the Sixth Amendment was not so narrow and describing scenario where the government had intentionally intruded upon defendant Michelle Reulet's attorney-client relationship prior to entering a written plea agreement).  As noted, the issue of whether petitioners are barred from raising claims that allege pre-plea violations is currently pending before the Tenth Circuit Court of Appeals.

[67] *Id.* at 54.

[68] *Id.*

[69] *Id.;* Doc. 784 at 24.

[70] *See, e.g.,* Doc. 722 (filed under seal).

*Shillinger* to avoid the obligation to prove prejudice is misplaced.  As explained in detail below, the Court concludes that the *Shillinger* per se rule does not extend to alleged violations that occurred post-plea or conviction but prior to sentencing, and thus these petitioners cannot rely on a presumption of prejudice to establish a Sixth Amendment claim.  To the extent the Court's prior order on standing with respect to this category of claims held or suggested otherwise, the Court reconsiders and clarifies that ruling at this time.[71]

As previously discussed, *Shillinger* includes unjustified governmental-intrusion claims as part of a limited class of ineffective-assistance cases where the defendant is relieved of the obligation to show prejudice.  The Tenth Circuit explained, "[p]rejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost."[72]  Faced with an egregious situation before and during trial, the *Shillinger* court did not have to evaluate the potential for prejudice that intentional-intrusion claims can have on sentencing.  Although it is clear that *Shillinger*'s per se rule applies when a petitioner's Sixth Amendment rights are violated at trial, the ruling did not extend—and has not been extended—to govern alleged intentional-intrusion violations at sentencing.

As discussed at length by *Shillinger* and this Court, the Supreme Court has not resolved "the issue of who bears the burden of persuasion for establishing prejudice or lack thereof when the Sixth Amendment violation involves the transmission of confidential defense strategy information," and federal appellate courts are divided on the issue.[73]  Because the *Shillinger* per se rule is a variety of presumptively prejudicial constitutional error that has yet to be recognized

---

[71] *See* Doc. 730 at 54; *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1224–25 (10th Cir. 2007) (explaining "law of the case" doctrine is discretionary, and that district courts remain free to reconsider their earlier interlocutory rulings made before the entry of judgment).

[72] 70 F.3d 1132, 1142 (10th Cir. 1995) (quoting *Strickland* v. *Washington*, 466 U.S. 668, 692 (1984)).

[73] *See supra* notes 25–26.

by the Supreme Court, such an extension warrants careful analysis and consideration of Supreme Court precedent.[74]  These cases are instructive and caution against the categorical extension of the *Shillinger* per se rule to violations that occurred post-plea or conviction but prior to sentencing.

The Supreme Court instructs that presumptively prejudicial constitutional error occurs when there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."[75]  Presumptively prejudicial constitutional error is one that is highly likely to have "some effect . . . on the reliability of the trial process."[76]  In other words, it is one that is highly likely to "affect[ ] the framework within which the trial proceeds."[77]

The issue here requires the Court to evaluate whether an unjustified governmental intrusion into a defendant's attorney-client relationship that occurs post-plea or conviction but before sentencing always triggers a presumption of prejudice without regard to whether the defendant was actually prejudiced in a given case.  This analysis turns on the potential for prejudice.  In making this determination, the Court is mindful of the Supreme Court's instruction that because such presumptively prejudicial violations are categorical, it should not look to the effect of the error or lack of prejudice in an individual petitioner's case to determine whether the presumption is justified.[78]

---

[74] *See United States v. Kaid*, 502 F.3d 43, 46 (2d Cir. 2007) (expressing "reluctance to extend a rule of per se prejudice in any new direction").

[75] *United States v. Cronic*, 466 U.S. 648,  658 (1984); *see Mickens v. Taylor*, 535 U.S. 162, 175 (2002).

[76] *Cronic*, 466 U.S. at 658.

[77] *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).

[78] *Cronic*, 466 U.S. at 659; *Bell v. Cone*, 535 U.S. 685, 695 (2002); *see* Doc. 730 at 54 (denying government's motion to dismiss post-plea/pre-sentence claims on standing grounds, explaining that while the actual sentence imposed may be relevant to whether an injury was actually incurred, it has no bearing on the *Shillinger* presumption of prejudice test and related fairness concerns).

Here, any Sixth Amendment violation occurred after a guilty plea or trial, so the integrity of the petitioner's conviction and trial process is not in question.  The only tainted proceeding could be sentencing.  An intentional-intrusion violation at sentencing is not intrinsically harmful to the entire trial process, nor does it pervade the entire criminal proceeding at sentencing the way it does at trial.  Such a violation post-plea or conviction but before sentencing simply does not implicate the same potential for prejudice as a violation at the conviction stage, especially where the guilty plea or conviction is untainted by any alleged Sixth Amendment violation.

For one, the balance of power at sentencing is different, given the checks and balances inherent to the sentencing process and the discretion of the court to impose a reasonable sentence that is informed by the facts established at trial, the plea or sentencing agreement, the Presentence Investigation Report prepared by the United States Probation Office, or the mandate when resentencing on remand.  Moreover, in cases resolved by a guilty plea or sentencing agreement, the government's discretion or capacity to prejudice the defendant is eliminated or curtailed before the sentencing hearing takes place.  While the Court can imagine a scenario where an intentional-intrusion violation could render a sentencing proceeding unfair, "it does not *necessarily* or *fundamentally* do so."[79]  Thus, the certain prejudice at trial described in *Shillinger* is not evident at sentencing.

An additional consideration here is that, unlike the context of trial, it is possible to "quantitatively assess" the effect of the government's alleged intrusion at sentencing.[80]  "A defining feature of structural error is that the resulting unfairness or prejudice is necessarily unquantifiable and indeterminate, such that any inquiry into its effect on the outcome of the case

---

[79] *United States v. Trujillo*, 960 F.3d 1196, 1207 (10th Cir. 2020).

[80] *See Fulminante*, 499 U.S. at 308.

would be purely speculative."[81]  As the *Shillinger* court recognized, prejudice from these type of

Sixth Amendment violations at trial is difficult to prove.[82]  The information needed to prove

prejudice often rests within the exclusive control of the prosecution and is not necessarily

apparent to the defendant or reviewing court.[83]  The prosecution team "makes a host of

discretionary and judgmental decisions in preparing its case.  It would be virtually impossible for

an appellant or a court to sort out how any particular piece of information in the possession of the

prosecution was consciously or subconsciously factored into each of those decisions."[84]

At sentencing, however, the effect of the government's misconduct can be measured by

both its action and inaction, such as whether it honored the terms of the plea agreement or

whether it made any objections or argument inconsistent with the terms of the plea agreement.

The effect can also be measured by the sentencing court's rulings on any government objections

or motions and the court's statement of reasons for the sentence it imposed.  Accordingly, rather

than engaging in impermissible speculation, the reviewing court can make "an intelligent

judgment about" the effect the alleged error might have on sentencing, as opposed to the

nebulous or pervasive errors at trial contemplated by *Shillinger*.

---

[81] *United States v. Solon*, 596 F.3d 1206, 1211 (10th Cir. 2010) (alteration omitted) (quoting *United States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005)); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n.4 (2006) ("[A]s we have done in the past, we rest our conclusion of structural error upon the difficulty of assessing the effect of the error.").

[82] 70 F.3d 1132, 1141–42 (10th Cir. 1995).

[83] *United States v. Danielson*, 325 F.3d 1054, 1070 (9th Cir. 2003) (adopting burden-shifting analysis for Sixth Amendment claims alleging governmental interference with attorney-client relationship; defendant must make prima facie showing of prejudice that government affirmatively intruded to obtain privileged information about trial strategy; burden then shifts to government to show there has been no prejudice to defendant as a result of these communications).

[84] *Id.* at 1071 (quoting *Briggs v. Goodwin*, 698 F.2d 486, 494–95 (D.C. Cir. 1983), *vacated on other grounds*, 712 F.2d 1144 (D.C. Cir. 1983)).

As both sides acknowledge, *Shillinger* rightly places great importance on the actual fairness and reliability of the trial process.[85]  But the categorical extension of *Shillinger*'s per se rule to include violations that occurred post-plea or conviction but before sentencing would amount to an overapplication of that ruling beyond the underlying rationale contemplated and described by the Tenth Circuit.[86]  Because such intentional-intrusion violations neither implicate the possibility of certain prejudice nor raise an allegation of unfairness that is "necessarily unquantifiable or indeterminate," none of the fairness or reliability concerns identified by the Supreme Court or the Tenth Circuit are present at sentencing.[87]  Deterrence of such misconduct alone is not enough to justify presumptive relief.  Without any analogous case in which the Supreme Court presumed prejudice under similar circumstances, the Court declines to do so here in the first instance.  Accordingly, the Court declines to extend *Shillinger*'s per se rule to post-plea or conviction, pre-sentence violations, and prejudice for this category of claims is not to be presumed.

Having determined that this temporal category of claims does not justify a *Shillinger* presumption of prejudice, the Court must apply the default standard of review for petitioners' individual claims.  Under *Shillinger*, the prejudice necessary to prove a Sixth Amendment intentional-intrusion violation is "a realistic possibility of injury to [the defendant] or benefit to

---

[85] 70 F.3d at 1142 (per se rule recognizes that intentional and groundless prosecutorial intrusions are never harmless because they "necessarily render a trial fundamentally unfair").

[86] *See Weatherford v. Bursey*, 429 U.S. 545, 557–58 (1977) (rejecting application of per se rule that "cuts too broadly" because in certain scenarios, where "there would have been no constitutional violation.").

[87] *United States v. Solon*, 596 F.3d 1206, 1211 (10th Cir. 2010) (quoting *United States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n.4 (2006). Likewise, none of the "egregious case" implications of *Brecht* footnote nine appear to be present in this category of cases, which requires a showing that "the integrity of the proceeding was so infected that the entire trial was unfair." *Duckett v. Mullin*, 306 F.3d 982, 994–95 (10th Cir. 1992).

the [government]."[88]  Thus, petitioners must show a realistic probability of prejudice in order to establish a violation of their Sixth Amendment rights.

The Court will issue orders in individual cases for this category consistent with this Order.  To avoid any confusion regarding the applicability of this Order and eliminate the need for any subsequent motions for reconsideration or clarification, the following is a list of petitioners who assert post-plea or conviction, presentence claims subject to this ruling.  As noted, six of these petitioners have pending motions for leave to amend to assert post-plea claims; three have asserted additional unrelated claims.  The government has moved to dismiss on procedural grounds in all but two cases.  Eight petitioners also allege pre-plea claims that are precluded by *Tollett*; the Court will defer ruling on these petitioners' § 2255 motions until the Tenth Circuit has entered a decision in the pending appeal of that issue.

- Aguilera, Oscar, 15-20043, 20-2027
- Alvarez, Juan Carlos, 14-20096, 19-2227
- Birdsong, Jerome, 15-20045, 19-2406
- Blakney, Martez, 15-20086, 18-2454
- Chinchilla, Rosalio, 14-20096, 19-2392
- Clark, Enoch, 14-20130, 19-2401 [pre-and post-plea violations]
- Faulkner, Lee, 14-20096, 18-2452
- Felix-Gamez, Ricardo, 15-20042, 18-2487 [pre-and post-plea violations]
- Galvan-Campos, Jesus, 14-20068, 19-2055
- Harsfell, Tyrssverd, 14-20134, 19-2722
- Haupt, Charles, 15-20019, 18-2423
- Hollins, Tarone, 15-20110, 18-2465
- Hurtado, Nicholas 15-20032, 18-2463 [motion to amend]
- Johnson, Booker, 15-40064, 18-4099 [pre-and post-plea violations]
- Jones, Calvin, 14-20138, 18-2554 [motion to amend]
- Jordan, Gary, 16-20022, 19-2015 [motion to amend]
- Krites, Phillip, 15-40078, 18-4096
- Lougee, David, 14-20068, 19-2226 [sentencing agreement]
- Love, Gerren, 15-20098, 19-2732
- McCambry, Ashawntus, 16-20003, 19-2394 [motion to amend]
- McDaniel, Joshua, 15-20050, 19-2145 [resentenced on remand]

---

[88] 70 F.3d at 1142 (quoting *Weatherford*, 429 U.S. at 558).

- Meinert, Scott, 14-20035, 18-2455
- Murphy, Michael, 14-20068, 19-2365
- Olea-Monarez, Vicencio, 14-20096, 20-2051 [additional claims]
- Orduno-Ramirez, Omar, 14-20096, 19-2166
- Pavone, Shawn, 15-20019, 20-2400
- Phommaseng, Petsamai, 15-20020, 18-2477 [pre-and post-plea violations]
- Ramirez, Miguel, 15-40059, 19-4059
- Rapp, Gregory, 14-20067, 18-2117 [pre-and post-plea violations; motion to amend; sentencing agreement; additional claims]
- Redifer, Michael, 12-20003, 19-2594
- Roark, Jeffrey.  15-20042, 19-2405 [pre-and post-plea violations]
- Shevlin, David, 15-20099, 18-2501 [motion to amend]
- Sneed, Shawn, 13-40123, 19-4008 [pre-and post-plea violations]
- Tillman, Terry, 13-20070, 19-2083
- Valdez, Hector, 14-20096, 19-2254
- Warren, Arrick.  13-20081, 19-2220 [pre- and post-plea violations; additional claims]
- Wilson, Timothy, 15-20081, 18-2449

Finally, motions to reconsider the Court's decision are highly discouraged, as the Court intends to proceed forthwith to issue orders applying its ruling to individual petitioners; any such motions and responses shall be limited to five pages, with no reply.

## IV.    Conclusion

At a July 2016 discovery conference in *Black*, this Court asked the prosecutor whether there were video recordings of the attorney visitation rooms at CCA.  This simple inquiry launched an investigation, appointment of a Special Master, a mandamus petition, multiple evidentiary hearings, an appeal, and over 100 § 2255 motions alleging improper governmental intrusion into scores of petitioners' attorney-client relationships.  It bears repeating that evidence of systemic government abuse that came to light in the *Black* investigation has not gone without consequences.  The *Black* investigation and evidentiary hearing were able to shine light on the practices and environment of the USAO, which in turn led to important reforms within the entire District of Kansas.  Moreover, in January 2020, this Court approved the settlement of a civil

class action brought on behalf of detainees who had their attorney-client telephone calls recorded by CCA and Securus Technologies, Inc.[89]  This civil action was not meant to be a substitute for habeas relief, and the plaintiffs did not waive or forfeit any right to file a § 2255 motion in return for participation in the class action; in fact, many plaintiffs are petitioners in this consolidated action.[90]

Since then, the Court has endeavored to give the consolidated § 2255 litigants an opportunity to seek efficient, fair, and consistent relief.  After careful consideration, the Court concludes that petitioners alleging claims in this final temporal category cannot rely on *Shillinger*'s per se rule.  As this Order makes clear, because this category of petitioners relies exclusively on the presumption of prejudice, it will more than likely result in a finding that petitioners have not demonstrated the required realistic possibility of prejudice needed to prove their Sixth Amendment claims, and their § 2255 motions will be subject to denial.  Given the amount of time these § 2255 motions have been pending, and that many petitioners in this category have been released from their custodial sentence, the Court is mindful of the need for finality these petitioners deserve and request.  The Court will soon issue orders in individual cases as noted above, all consistent with the required particularized approach recently stressed and reaffirmed by the Tenth Circuit when it dismissed the appeal in *United States v. Carter*.[91]

**IT IS THEREFORE ORDERED BY THE COURT** that the Court declines to extend the *Shillinger* per se rule to alleged Sixth Amendment intentional-intrusion violations that occurred after a plea or conviction but before sentencing; the above-captioned petitioners cannot rely on the *Shillinger* presumption of prejudice to establish their Sixth Amendment claims, but

---

[89] *Huff v. CoreCivic*, D. Kan. No. 17-cv-2320-JAR-JPO, Doc. 177 (Jan. 28, 2020).

[90] *See id.*, Doc. 177-1 (list of settlement class members).

[91] 995 F.3d 1222, 1227–28 (10th Cir. 2021).

instead must demonstrate a realistic possibility of prejudice as discussed in this Order.  The Court will proceed to analyze individual petitioners' claims consistent with this Order.

**IT IS FURTHER ORDERED** that motions to reconsider or clarify the Court's decision are discouraged; any such motions and responses shall be limited to **five pages**, with no reply.

**IT IS SO ORDERED.**

Dated: <u>December 10, 2021</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE